## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **PATRICK BRAUN**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**REPUBLIC SERVICES, INC.; THE EMPLOYEE BENEFITS COMMITTEE OF REPUBLIC SERVICES, INC.; and JOHN DOES 1–20**,<br><br>Defendants. | **Civil Action No.:**<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Patrick Braun ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Republic Services, Inc. ("Republic"), the Employee Benefits Committee of Republic (the "Committee"), and the individual members of the Committee during the relevant time period (collectively, the "Defendants"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for entities like Republic to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without making available a reasonable alternative standard to avoid those surcharges. This lawsuit challenges Defendants' unlawful practice of charging a "tobacco surcharge" under the Republic Employee Benefit Plan (the "Plan") in a manner that violates the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness

programs that promote health if, and **only if**, such programs strictly comply with the criteria governing these programs, including: (i) offering a meaningful and accessible *reasonable* alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclosing the availability of that alternative standard—along with a statement that the recommendations of a participant's personal physician will be accommodated—in "**all** plan materials" describing the surcharge; (iii) making available the "full reward" to all participants who satisfy the reasonable alternative standard; and (iv) providing participants with the opportunity to qualify for the reward at least once per year. *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j); 29 C.F.R. § 2590.702(f). Defendants comply with none of these requirements.

2.      Tobacco surcharges have become more prevalent in recent years but, to be lawful, plans must make available a compliant "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers **must** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements.

3.      ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are

2

"subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, an employer must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard; plans must also provide proper notice to all participants. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendants' Plan imposes a $40 per month tobacco surcharge on every participant who attests to being a tobacco user and who enrolls in Plan medical coverage—a $480 per year penalty assessed solely on the basis of a health factor—without making available or telling participants about a compliant alternative standard.

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

5.     Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual participating in the program* should be able to receive *the full amount of any reward or incentive* . . .." *Id.*, 33160 (emphasis added). Defendants violate these requirements by failing to make available a

---

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual* as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

reasonable alternative standard that provides full reimbursement to employees who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants of all the avenues available to them to avoid the surcharge, including benefit guides, plan documents, and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

6.  Defendants cannot qualify for the statutory safe harbor because, while they impose a health-based surcharge, it does not comply with the requirements for a lawful wellness program. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*id*., 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. Its core deficiency is that it does not make available a reasonable alternative standard that provides the "full reward" to ***all*** similarly situated individuals who complete it, as required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). A 2024 Employee Benefits Summary for the Plan states: "If you elect that you are a tobacco user and enroll in Republic Services medical coverage, you will be charged the Tobacco Surcharge of $40/month. **You will not be able to change your tobacco usage status until the next Open Enrollment window.**" Defendants' own description of the surcharge is therefore a closed door: a participant who is charged the surcharge is told, on the face of the Plan's enrollment materials, that there is no path to avoid it. To that extent, Defendants fail to make available a clearly defined, reasonable alternative standard that ensures employees have an opportunity to avoid the surcharge. Instead, Defendants use these unlawfully obtained funds to offset their own contributions to the Plan, which allows additional money to remain in Defendants' accounts on which the company can earn interest.

7.  Defendants also violate ERISA's wellness program regulations by failing to provide the notice required by statute and regulation, which is an independent basis for liability.

Federal law requires that a plan "disclose in **all plan materials** describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). Defendants' participant-facing materials describe the tobacco surcharge and the higher premium contributions imposed on tobacco users, but do not disclose a *compliant* alternative avenue that provides all similarly situated individuals with the full reward. Specifically, nowhere in the Plan's Summary Plan Description ("SPD") or, upon information and belief, any other participant-facing material describing the surcharge does Republic disclose: (i) the existence of any reasonable alternative standard to avoid the surcharge; (ii) the availability of the "full reward" (i.e., a refund of the $40 per month surcharge) to participants who satisfy such an alternative standard; (iii) the regulatory requirement that the recommendations of the participant's personal physician will be accommodated; or (iv) any contact information through which a participant can request or pursue an alternative standard. The SPD—the Plan document required by ERISA to disclose the terms of any wellness program that affects premiums—does not even mention the tobacco surcharge.

8.     Defendants' conduct is unlawful for at least four independent reasons. **First**, Defendants charge a premium differential based on a health factor without satisfying the wellness-program exception. **Second**, Defendants fail to provide the notice required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v) in *any* plan materials describing the surcharge, including the SPD. **Third**, Defendants' own disclosures admit that participants charged the surcharge cannot change their tobacco-user status mid-year, a facial violation of the regulatory requirement that participants have the opportunity to qualify for the reward at least once per year, and of the "full reward" requirement, because the surcharge is locked in for the entire plan year regardless of any cessation effort. **Fourth**, Defendants used the surcharge as a self-funding

6

mechanism: the Plan's own governing documents acknowledge that the Employer "will use employee contributions first" to pay self-funded benefits, meaning every dollar of surcharge collected from participants reduced Republic's own contribution obligation dollar-for-dollar, in breach of Defendants' fiduciary duties of loyalty under ERISA § 404(a)(1)(A).

9. Because Defendants impose a $40 monthly tobacco surcharge and do not provide all similarly situated individuals with at least one opportunity to obtain the full reward or provide the required notice in all Plan materials discussing the surcharge, the Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied." Final Regulations, 33160. As a result of these deficiencies, Defendants cannot take advantage of the statutory safe harbor and, therefore, the surcharge functions as a penalty rather than a compliant wellness incentive. Deficient and misleading notice is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

10. Defendants also breached their fiduciary duties under ERISA by collecting and retaining tobacco surcharge payments from participants in a manner inconsistent with governing law and using those funds to offset their own Plan-related contributions. Rather than holding participant contributions for the exclusive benefit of the Plan, Defendants commingled surcharge payments with the company's general assets and employer funds, allowing those amounts to reduce Defendants' financial obligations while participants were denied the full reward required by law. This misuse of participant-funded surcharges constitutes a breach of the duties of loyalty and prudence and gives rise to equitable relief, including disgorgement of any profits or financial benefits derived from Defendants' unlawful conduct.

7

11.     This Complaint alleges that Defendants impose a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendants bear the burden of proving that their tobacco surcharge is lawful by showing that their wellness program fully complies with *every* requirement under ERISA. Charging participants a tobacco surcharge while not informing them of a *reasonable* alternative standard that makes available the "full reward," and failing to provide proper notice makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure these fundamental defects. These types of intentional barriers and restrictions to avoiding health-based surcharges limit engagement with the program, deter participants from making the effort to improve their health, and prevent employers from taking advantage of the statutory safe harbor. Defendants' Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

12.     Participants like Plaintiff are permitted to challenge a surcharge when there is no compliant wellness program made available or when employers provide deficient or misleading information. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions along with facts showing the deficiencies in the wellness program, the burden shifts to the employer, Republic, to demonstrate that the wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

13.     Plaintiff is an employee of Republic who paid the unlawful tobacco surcharge, and continues to pay it, to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

14.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendants from continuing to profit from their violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

15.     Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of Minnesota residing in the County of Wright. Plaintiff is an employee of Republic, who paid, and continues to pay, a tobacco surcharge of $40 (roughly $480 annually) under the Plan. Plaintiff is required to pay this tobacco surcharge to maintain health insurance under the Plan.

16.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

17.     Republic is a Delaware corporation with its principal place of business in Phoenix, Arizona. Republic is a publicly traded environmental services company that provides non-hazardous solid waste collection, transfer, disposal, recycling, and related environmental services to residential, municipal, commercial, and industrial customers throughout the United States. Republic is the Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

9

Republic Services exercises discretionary authority and control over the management and administration of the Plan, including the design, implementation, and communication of the tobacco surcharge, and is therefore a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). At all relevant times, Republic employed tens of thousands of employees and maintained a Plan covering a substantial number of participants and beneficiaries. The Plan is an employee welfare benefit plan subject to ERISA, 29 U.S.C. § 1002(1) and (3). As of December 31, 2024, the Plan covered more than 30,000 participants

18.    The Committee is identified in the SPD as the "Plan Administrator" and is located in or around Phoenix, Arizona. The Committee is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), with respect to the design, administration, and communication of the tobacco surcharge.

19.    Defendants John Does 1–20 are individuals, the identities and capacities of which are presently unknown to Plaintiff, that exercised discretionary authority over the administration, management, or disposition of Plan assets, including the tobacco surcharge, and are therefore fiduciaries under ERISA § 3(21)(A). Plaintiff reserves the right to amend the Complaint to identify these Defendants when their identities are ascertained.

## JURISDICTION AND VENUE

20.    The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21.    This Court has personal jurisdiction over Defendants because Defendants have significant operations in this District, Plaintiff's claims and the claims of all others similarly

situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff in the State of Arizona, and Defendants have purposefully availed themselves of the privilege of conducting business in the State of Arizona.

22. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, Republic maintains its principal place of business and conducts business in this District, and Defendants have substantial contacts with and may be found in this District.

## FACTUAL BACKGROUND

### I. DEFENDANTS' TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements

23. Congress amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

24. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe harbor exception—must strictly adhere to the mandated regulatory requirements.

25. Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

26. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

27. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used

by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

28.    The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if __all__ of the [] requirements are satisfied*." (emphasis added)).

### B.  Regulatory Criteria

29.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: Programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination

is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: Notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

30.    The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

31.    Regarding the first criterion, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

32.     A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should be able to receive the ***full amount of any reward or incentive*. . .." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

33.     The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in, or participation in, a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id.* The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id.*; Final Regulations, 33180.

34.    For health contingent wellness programs, the Final Regulations require that the notice be disclosed "in *all* plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## II.    DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

### A.    The Plan

35.    The Plan is an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and a "group health plan" within the meaning of ERISA § 733(a)(1), 29 U.S.C. § 1191b(a)(1).

36.    The Plan is funded by both employer and employee contributions. With respect to medical coverage, the SPD provides that benefits are "[s]elf-insurance and insurance" and that "[y]ou and Republic Services share the cost of the coverage for benefits."[5] Republic, as Plan Sponsor, "may change the amounts that it contributes toward benefits under the Plan at any time and for any reason." *Id.* at 5. Employees pay their share of the cost through "salary reduction contributions" under the Plan, with deductions taken on a pre-tax basis from each paycheck. *Id.*

---

[5] Unless otherwise noted, quoted Plan language is taken from the SPD, attached hereto as Exhibit A. *See id.* at 5, 19, 34. Plaintiff also relies on Republic's 2024 Employee Benefits Summary, attached hereto as Exhibit B.

37. The SPD admits that, for self-funded benefits, the Employer's and employees' contributions are commingled and used to pay benefits in a specific order. It provides: "With respect to any self-funded benefits which are payable out of the Employer's general assets, ***the Employer will use employee contributions first and will then use Employer contributions*** to pay such benefits directly on behalf of participants and their covered family members." *Id.* at 19 (emphasis added). That admission establishes that any participant contribution, including any tobacco surcharge, directly offsets Republic's own contribution obligation, dollar for dollar.

### B. The Tobacco Surcharge

38. The Plan imposes a tobacco surcharge on every participant who elects to be a tobacco user and enrolls in Plan medical coverage. The 2024 Employee Benefits Summary, which is distributed to participants in connection with open enrollment, describes the surcharge in a single sentence: "If you elect that you are a tobacco user and enroll in Republic Services medical coverage, you will be charged the Tobacco Surcharge of $40/month." Ex. B at 8. It states, in italicized and bolded text: "***You will not be able to change your tobacco usage status until the next Open Enrollment window.***" Upon information and belief, the surcharge has been imposed in materially identical form for the 2024 Plan Year and each Plan Year thereafter.

39. The tobacco surcharge therefore imposes an annualized cost of $480 per year on every participant who attests as a tobacco user. For low- and middle-wage employees, the surcharge is a substantial percentage of paycheck deductions and a real-dollar barrier to coverage.

40. The tobacco surcharge is a "health-contingent wellness program" within the meaning of 29 C.F.R. § 2590.702(f)(1)(ii) because it varies premium contributions based on whether an individual satisfies a standard related to a health factor (non-use of tobacco). *See Baker v. 7-Eleven Inc.*, No. 3:25-cv-01609, 2026 U.S. Dist. LEXIS 33855, at *9–12 (N.D. Tex. Feb. 19,

17

2026). It is unlawful under 29 U.S.C. § 1182(a)–(b) unless it satisfies each of the conditions set forth in 42 U.S.C. § 300gg-4(j) and 29 C.F.R. § 2590.702(f)(4).

### C. Defendants Fail to Provide, or Disclose, Any Reasonable Alternative Standard

41.    Defendants' tobacco surcharge is discriminatory because Defendants do not make available a compliant outcome-based wellness program that ensures that all similarly situated individuals have at least one annual opportunity to obtain the full reward upon completion of an alternative standard during the Plan year. To satisfy the wellness-program exception, the Plan must (i) make available a reasonable alternative standard, or waiver, by which a participant can avoid the surcharge; (ii) make available the "full reward" to all participants who satisfy that alternative standard; and (iii) provide the participant an opportunity to qualify for the reward at least once per year. *See* 42 U.S.C. § 300gg-4(j)(3)(B)–(E); 29 C.F.R. § 2590.702(f)(4)(i)–(v).

42.    Upon information and belief, no participant-facing Plan material describes any reasonable alternative standard to the tobacco surcharge. The 2024 Employee Benefits Summary—the principal participant-facing document describing the surcharge—describes only the surcharge itself and tells participants flatly that they "will not be able to change [their] tobacco usage status until the next Open Enrollment window." Ex. B. at 8. The Benefits Summary does not state that any alternative standard exists, does not state that the surcharge can be refunded, and does not state how a participant might satisfy any such alternative.

43.    The Benefits Summary references, elsewhere in the Benefits Summary, a "Quit for Life" resource does not satisfy the regulation. *See* Ex. B. at 16. The Benefits Summary mentions "Quit for Life" only in the "Benefits Resources" section alongside generic resources. The Benefits Summary never describes "Quit for Life" as a reasonable alternative standard, never states that completing "Quit for Life" allows a participant to avoid or recover the surcharge, never identifies

what a participant must do to satisfy it, and never describes the reward available upon completion. A buried contact entry that does not describe terms, conditions, or rewards is not an "alternative standard," it is, at most, a phone number.

44.    Even assuming *arguendo* that Republic intended "Quit for Life" to operate as a reasonable alternative standard, upon information and belief, no Plan material informs participants of that intention or of the path by which completion translates into the full reward. The Final Regulations expressly forbid reliance on undisclosed alternatives: a wellness program does not satisfy the safe harbor unless the alternative is "disclose[d] in all plan materials describing the terms of [the] wellness program." 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v).

45.    Because there is no reasonable alternative standard, Defendants fail to make available the full reward. The "full reward" requirement provides that the alternative standard, if satisfied, must result in similarly situated individuals receiving the same reward the non-tobacco-user receives, not a prorated or prospective fraction of it. 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(3)(iv). The Departments confirmed that in the preamble. *See* 78 Fed. Reg. at 33163.

46.    Defendants violate the full reward requirement on the face of their own materials. The Benefits Summary tells participants that they "will not be able to change [their] tobacco usage status until the next Open Enrollment window." That language confirms that, even if a participant entirely ceased tobacco use mid-year, completed "Quit for Life," or obtained a physician's recommendation, the participant would continue to be charged the $40 monthly surcharge for the balance of the Plan Year. By Defendants' own admission, the most any participant could ever obtain is a *prospective* reduction beginning the following Plan Year, which is not sufficient to satisfy the statutory and regulatory requirements.

47.     Defendants also fail to provide an opportunity to qualify for the full reward at least once per year. The statute and Final Regulations require that "[t]he full reward . . . be available to all similarly situated individuals," and that individuals must be given the opportunity to "qualify for the reward under the program at least once per year." 42 U.S.C. § 300gg-4(j)(3)(C); 29 C.F.R. § 2590.702(f)(4)(i). These are independent requirements: the once-per-year opportunity must be a meaningful opportunity to obtain the *full* reward for the relevant Plan Year, not merely an opportunity to re-attest at next year's open enrollment.

48.     Defendants' lock-in provision, whereby participants are not able to change their tobacco usage status until the next Open Enrollment window confirms that no in-year opportunity to qualify for the reward exists. Defendants' design treats annual open enrollment as the *only* opportunity for non-tobacco-user pricing, and even then only on a prospective basis. That design forfeits the safe harbor.

49.     Defendants fail to provide the required notice in all plan materials describing the surcharge. The wellness-program exception requires the Plan to "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard)." 42 U.S.C. § 300gg-4(j)(3)(E). Defendants' Benefits Summary is a "plan material describing the terms of the wellness program" within the meaning of 42 U.S.C. § 300gg-4(j)(3)(E) because it describes the surcharge, its trigger (electing tobacco-user status), its amount ($40 per month), and its duration (the entire Plan Year). The Benefits Summary contains no statement of the availability of any reasonable alternative standard, no contact information for obtaining one, and no statement that the recommendations of a participant's personal physician will be

20

accommodated. The omission of each of these elements independently violates the notice requirement.

50.     The Plan's SPD likewise fails to disclose any of the required elements. ERISA § 102, 29 U.S.C. § 1022, and 29 C.F.R. § 2520.102-3(l) require the SPD to describe the Plan's contribution structure, premium differentials, and wellness program terms. As the Departments explained, wellness program terms, including the availability of any reasonable alternative standard, are "generally required to be disclosed in the summary plan description (SPD) . . . if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." Final Regulations, 78 Fed. Reg. at 33166. Defendants' SPD does not even mention the existence of the tobacco surcharge, let alone any reasonable alternative standard, the right to the full reward, contact information for obtaining the alternative, or the physician-accommodation statement. By omitting this information from the Plan's core governing document, Defendants deprived participants of clear, accessible notice of material Plan terms and made it impossible for them to understand how to avoid the surcharge.

51.     These notice omissions independently violate ERISA's wellness program structure and preclude Defendants from invoking the statutory safe harbor for health-contingent wellness programs. By presenting the tobacco-related premium differential without disclosing in any participant-facing material an entitlement to a reasonable alternative standard, the full reward, or the availability of the physician-accommodation process, Defendants have administered a program that is opaque, inaccessible, and structured in a manner that deters participation rather than promoting health.

52.     Had Defendants structured the program in compliance with ERISA, by making available, and notifying participants of, a compliant reasonable alternative standard, participants

21

would have been aware of the avenues available to avoid the surcharge and the steps needed to do so. Instead, Defendants failed to make available a program or tell any participants about how they could avoid the surcharge.

53.     Plaintiff paid the tobacco surcharge and does not recall receiving information describing a reasonable alternative standard. Had Defendants provided clear and compliant disclosures and a genuinely reasonable alternative, Plaintiff and similarly situated participants could have taken timely steps to obtain the full reward. Instead, they were deprived of the meaningful opportunity guaranteed by ERISA and subjected to ongoing financial penalties based on a health factor.

54.     Allowing entities like Republic to exploit participants and unlawfully extract millions of dollars annually from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This type of conduct violates not only ERISA's antidiscrimination rules governing wellness programs but also the statute's fiduciary duties of loyalty and prudence, as Defendants failed to administer the Plan solely in the interest of participants.

## III.   DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

55.     Defendants administered the tobacco surcharge by communicating, each year, with participants about the terms governing the wellness program; by designating which participants qualify to have the surcharge removed and when; and by determining how the surcharge proceeds were used. Defendants withhold the tobacco surcharge directly from participants' paychecks as

pre-tax salary-reduction contributions, alongside the required medical premium contributions. These surcharge withholdings are funding for Plan coverage, not separate penalties, and are treated the same way as other Plan contributions.

56.    The SPD makes clear that medical coverage is funded by both employer and participant contributions and identifies the order in which those contributions are applied to pay benefits. It states that "[w]ith respect to any self-funded benefits which are payable out of the Employer's general assets, the Employer will use employee contributions first and will then use Employer contributions to pay such benefits directly on behalf of participants and their covered family members." Ex. A at 19. That means every dollar of employee contribution, including every dollar of tobacco surcharge, reduces the amount of Employer contribution that Republic would otherwise have had to commit to the Plan.

57.    By layering a $40 monthly tobacco surcharge on top of participants' required medical premium contributions, Defendants created what should have been a third stream of funding into the Plan: (i) participants' required medical premium contributions; (ii) Republic's promised Employer contribution; and (iii) the additional tobacco surcharge. Instead of allowing all three streams to flow into the Plan as a benefit to participants, Defendants used the tobacco surcharge to offset and reduce Republic's funding obligation. Because the cost of coverage for each tier is fixed at the start of each Plan Year, every dollar of surcharge collected reduced the company's contribution dollar-for-dollar. The surcharge did not increase resources available to the Plan; it simply shifted costs away from Republic and onto participants.

58.    This practice constitutes classic self-dealing. Defendants used the mechanisms of the Plan (i.e., the salary-reduction structure, the Plan's funding hierarchy, and the wellness program apparatus) to realize savings for the company itself, depriving the Plan of the full benefit

23

of the three distinct funding streams it should have received. In doing so, Defendants failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to, for example, offset the premiums of non-tobacco users or reduce future premium increases, Defendants used the surcharge to relieve Republic's contribution obligation that it otherwise would have had to satisfy out of corporate funds. Upon information and belief, the contribution dollars that Republic thereby avoided contributing to the Plan remained in its own corporate accounts and earned interest for Republic, while the Plan was deprived of the full amount of Employer funding it should have received. This diversion violates ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A) and constitutes a prohibited transaction under 29 U.S.C. § 1106.

## CLASS DEFINITION AND ALLEGATIONS

59.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

60.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, during the relevant time period, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendants.

61.    Excluded from the Class are Defendants' officers and directors. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

62.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(1).

24

63.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

64.    **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a.  Whether Defendants' tobacco surcharge discriminates against participants based on a health status related factor;

   b.  Whether Defendants make available a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

   c.  Whether Defendants provided the required notice in **all** the Plan materials describing the surcharge;

   d.  Whether Defendants provided the required statement that participants' personal physicians' recommendations would be accommodated in all Plan materials describing the surcharge;

   e.  Whether Defendants' wellness program violates ERISA and the Final Regulations;

   f.  Whether Defendants breached their fiduciary duties by collecting and retaining the tobacco surcharge to offset their own contributions to the Plan;

   g.  Whether Defendants breached their fiduciary duties by administering the Plan that refuses to reimburse participants who complete an alternative standard;

   h.  Whether Defendants breached their fiduciary duties by failing to periodically review the terms of their wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

   i.  Whether Republic breached its fiduciary duty by failing to monitor the activities of the Committee;

   j.  The appropriate mechanisms to determine damages on a class-wide basis.

65.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal

theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

66.   **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

67.   Plaintiff seeks declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendants will be allowed to profit from their unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide declaratory relief is issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO MAKE AVAILABLE A REASONABLE ALTERNATIVE STANDARD
### (Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(B)–(E); 29 C.F.R. § 2590.702(f)(4)(i)–(v))

68.   Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as if fully set forth herein.

69.   ERISA prohibits group health plans from charging participants more for coverage based on a health-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). A tobacco

26

surcharge is therefore unlawful unless the plan satisfies *each* condition of the narrow wellness-program exception. *Id.* §§ 1182(b)(2)(B), 300gg-4(b)(2)(B). To qualify for the wellness-program exception, the Plan must make available a reasonable alternative standard, make the *full* reward available to participants who satisfy it, and provide participants the opportunity to qualify for the reward at least once per year. 42 U.S.C. § 300gg-4(j)(3)(B)–(E); 29 C.F.R. § 2590.702(f)(4)(i)–(v).

70.    Defendants fail each requirement. By imposing discriminatory surcharges of approximately $40 per month on participants who use tobacco, without complying with the statutory and regulatory requirements governing outcome-based wellness programs, Defendants violate ERISA § 702(b), 29 U.S.C. § 1182(b)(1), and 29 C.F.R. § 2590.702(f)(4). Upon information and belief, Defendants do not make available any wellness program to avoid the surcharge. There is no reasonable alternative standard that would allow a participant to obtain the full reward. Upon information and belief, no Plan material identifies a reasonable alternative standard. The Plan's lock-in provision (e.g., "You will not be able to change your tobacco usage status until the next Open Enrollment window") confirms on the face of the materials that no in-year opportunity to obtain the full reward exists, and that the most a participant could ever obtain is a prospective adjustment beginning the following Plan Year. That is the very prorated, partial-reward structure Congress and the Departments forbade.

71.    Further, Republic failed to include the required disclosures needed to qualify for the safe harbor. Republic's Employee Benefits Summary is a plan material describing the terms of the wellness program. It describes the surcharge, the trigger, the amount, and the duration. It does not include any statement regarding the availability of a reasonable alternative standard, any contact information for obtaining the alternative, or the statement that the recommendations of a

participant's personal physician will be accommodated. The omission of each element independently violates 29 C.F.R. § 2590.702(f)(4)(v) and 42 U.S.C. § 300gg-4(j)(3)(E). The Plan's SPD is also a plan material describing the Plan's contribution structure, benefit terms, and premium differentials. ERISA § 102 and 29 C.F.R. § 2520.102-3 require the SPD to disclose, among other things, "[a] description or summary of the benefits" and "the circumstances which may result in . . . loss[] [or] forfeiture" of those benefits. The Departments also made clear that information relating to premium differentials must be disclosed in the SPD, but it does not mention the tobacco surcharge, any reasonable alternative standard, any contact for the alternative, the right to the full reward, or the physician-accommodation statement. Defendants therefore fail to satisfy the framework's notice requirements. *See* 29 C.F.R. § 2590.702(f)(4)(v) and 42 U.S.C. § 300gg-4(j)(3)(E).

72. Because Defendants fail to satisfy these essential statutory and regulatory conditions, the wellness program safe harbor is unavailable, and the tobacco surcharge functions as a penalty rather than a compliant wellness incentive. Defendants' violations are facial and require no individualized inquiry: they are admitted in Defendants' own enrollment materials.

73. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendants' surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendants cannot qualify for the statutory safe harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

28

**COUNT II**
**BREACH OF FIDUCIARY DUTY AND PROHIBITED TRANSACTIONS**
**(PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**
**(Brought Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2))**

74.    Plaintiff re-alleges and incorporates herein by reference all prior allegations of this Complaint.

75.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1), 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). At all relevant times, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The Plan's own SPD confirms it. The SPD identifies the Committee as the "Plan Administrator," and provides that "[t]he Plan Administrator and Claims Administrator . . . have full discretionary authority to determine eligibility, status, and rights of all individuals under the Plan and to construe any and all terms of the Plan." Ex. A. at 32.

76.    Outside of its role as Plan sponsor, Republic exercised fiduciary discretion in the administration of the Plan and its assets after the Plan was designed in the collection, handling, and disposition of surcharge proceeds, which became Plan assets upon collection from participants (*see* 29 C.F.R. § 2510.3-102) and in the ongoing monitoring (or failure to monitor) the Committee and the Plan's administration to ensure compliance with ERISA over multiple Plan Years.

77.    On information and belief, Defendants used Plan assets (i.e., the surcharge proceeds withheld from participants' paychecks) to offset, dollar-for-dollar, Republic's own determined

29

contribution obligations to the Plan, rather than depositing and retaining those Plan assets in the trust to fund benefits and accumulate reserves. The Plan's contribution hierarchy—expressly acknowledged in the SPD—dictates that "the Employer will use *employee contributions first* and will then use Employer contributions to pay" self-funded benefits. Ex. A. at 19. Every dollar of tobacco surcharge therefore directly offset Republic's own contribution obligation. The cost savings inured to Republic, not to the Plan or its participants.

78.     Defendants further breached the duty of loyalty by communicating to participants, in Plan materials they prepared and disseminated, descriptions of the tobacco surcharge that omitted material information ERISA required to be disclosed (i.e., the availability of a reasonable alternative standard, contact information, the physician-accommodation statement, and the right to the full reward). As fiduciaries, Defendants had a duty to communicate truthfully and completely about the Plan's terms. Their omissions deprived participants of the information necessary to avoid the surcharge, information that, had it been disclosed, would have directly reduced participants' cost-sharing and increased the funding flowing to the Plan from Republic. Year after year, the Committee administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21). Upon information and belief, the Committee participated in the effort to funnel surcharge funds into the company's accounts while refusing to make available a compliant alternative standard.

79.     Upon information and belief, the Committee controlled and disseminated Plan communications, including benefits guides and summary plan descriptions describing the premium differential but failed to include notice of a reasonable alternative standard. The Committee also failed to conduct periodic, prudent reviews of the wellness program and related communications to ensure compliance with ERISA. Instead, it allowed a defective program that

denied retroactive relief to persist year after year, despite its discriminatory effect and clear inconsistency with the full reward rule.

80. The Committee further breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by permitting surcharge funds to reduce Republic's own contribution obligations and by maintaining a program that withheld reimbursement from participants who completed the reasonable alternative standard. It also failed to notify participants in all plan materials discussing the surcharge of all the avenues by which to avoid the surcharge, as required by 29 C.F.R. § 2590.702(f)(4)(v). These omissions and misrepresentations are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

81. ERISA also imposes on appointing fiduciaries (i.e., Republic) the duty to monitor and supervise the actions of those administering the Plan (i.e., the Committee). By allowing administrators and benefits staff to implement and maintain a non-compliant wellness program that violated ERISA's notice and full-reward requirements, Republic breached its duty to monitor. Republic failed to review the program's design, the disposition of surcharge proceeds, and the accuracy of participant communications, despite its obligation to ensure the Plan's ongoing compliance with federal law.

82. As a result of these breaches, Republic was unjustly enriched at the expense of the Plan and its participants. By deducting surcharges directly from employees' paychecks without administering a compliant wellness program or providing full-year reimbursement, the Committee secured financial savings for the employer while shifting costs to participants. The structure and administration of the program ensured that not all "similarly situated individuals" could receive the full reward, and participants were deprived of clear notice of the reasonable alternative

standard. In effect, Defendants converted employee contributions (i.e., Plan assets) into a source of corporate savings, in violation of 29 U.S.C. § 1104(a)(1)(A).

83.     By withholding unlawful surcharges and using those funds to offset Republic's financial obligations, Defendants caused the Plan to engage in transactions constituting a direct or indirect transfer of Plan assets for the benefit of a party-in-interest—namely, Republic—in violation of 29 U.S.C. § 1106(a)(1). Republic is a party-in-interest under 29 U.S.C. § 1002(14) because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's administration and finances.

84.     Republic's conduct caused harm to the Plan. The Plan was deprived of assets that should have been deposited, retained, invested, and used to fund benefits and accumulate reserves for participants. Instead, those assets were used to reduce Republic's own corporate contribution obligation. The Plan also suffered an opportunity-cost loss. Had Republic either refrained from collecting unlawful surcharge amounts or treated those amounts as supplemental Plan funding rather than as a substitute for its own contribution obligation, the trust would have held more assets, accumulated greater reserves, and maintained a stronger funding base.

85.     Republic also obtained wrongful profits from its use of Plan assets. The savings Republic achieved by offsetting its own actuarially determined contribution obligation were profits made through the use of Plan assets. Under ERISA § 409(a), Republic, the Committee, and its individual members are liable to "restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." 29 U.S.C. § 1109(a).

86.     As a direct and proximate result of these fiduciary breaches, Plaintiff seeks Plan-wide relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). Defendants are liable to make good to the Plan all losses resulting from their breaches, restore all profits obtained through the use of

Plan assets, disgorge the corporate savings Republic achieved by offsetting its own contribution obligations, and provide other appropriate equitable relief, including an accounting, constructive trust, equitable lien, and removal or replacement of fiduciaries who breached their duties. *See* 29 U.S.C. § 1109(a).

**COUNT III**
**BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)**
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

87.    Plaintiff re-alleges and incorporates herein by reference each preceding allegation of this Complaint as if fully set forth herein.

88.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant to seek individualized equitable relief for a fiduciary's breach of duty. Defendants breached their fiduciary duties by collecting unlawful tobacco surcharges from participants, treating those amounts as Plan assets, and using them to reduce the company's own contribution obligations rather than administering them solely for the benefit of participants and beneficiaries. That same conduct also constituted prohibited transactions under 29 U.S.C. § 1106(a)(1)(D) and § 1106(b)(1), because Republic used Plan assets for its own benefit.

89.    Plaintiff suffered individualized harm from Republic's conduct. He paid tobacco surcharges that should not have been imposed. He was also deprived of the benefit of having those contributions deposited, retained, and used in the Plan's trust to fund benefits and accumulate reserves solely in participants' interests. Because the Plan's funding structure ties participant contributions to the Plan's assets, reserves, and expected benefit obligations, Plaintiff also bore, and continues to bear, higher contribution costs and increased risk of future cost increases or benefit reductions.

90.     Plaintiff and the Class therefore seek individualized equitable relief under 29 U.S.C. § 1132(a)(3). That relief includes equitable restitution of unlawfully collected surcharge amounts traceable through Defendants' handling and commingling of Plan funds; disgorgement of profits and corporate savings Republic obtained through its use of Plan assets; an accounting of all surcharge amounts collected and used to offset Republic's contribution obligations; imposition of a constructive trust or equitable lien over funds wrongfully retained by Republic; and declaratory relief prohibiting Republic from continuing to administer a noncompliant wellness program or using Plan assets to reduce its own contribution obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.  An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B.  A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharge;

D.  A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative

standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendants to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory relief as necessary and appropriate, including an Order that Defendants' program was unlawful and that Defendants should not further violate the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendants collected;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of their collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an

Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: May 19, 2026                    Respectfully submitted,


                                       /s/ *Samantha A. Caputo*
                                       _____

                                       Samantha A. Caputo (Bar No. 040229)
                                       **SIRI & GLIMSTAD LLP**
                                       11201 N. Tatum Boulevard
                                       Suite 300
                                       Phoenix, AZ 85028
                                       Tel: (212) 532-1091
                                       E: scaputo@sirillp.com

                                       *Attorneys for Plaintiff and the Proposed Class*